# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**STEIN & NIEPORENT LLP**
David Stein (DS 2119)
1441 Broadway, Suite 6090
New York, New York 10018
(212) 308-3444

Attorneys for Defendant

| | |
|---|---|
| Jose Mejia, Individually, and On Behalf of All Others Similarly Situated, | |
| Plaintiff, | DOCKET NO. 22-cv-3667 (VSB) (SLC) |
| - vs. – | |
| High Brew Coffee, Inc., | |
| Defendant. | |

---

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

---

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT.................................................................................................. 1

STATEMENT OF FACTS....................................................................................................... 2

LEGAL ARGUMENT .......................................................................................................... 3

I.    The complaint should be dismissed because High Brew's website is not a place of public accommodation under the ADA .................................................................. 3

II.   Plaintiff's city law claims must be dismissed for the same reasons his ADA claims must be.........................................................................................................14

III.  Plaintiff is not entitled to a recovery of "civil penalties and fines" or punitive damages under the NYCHRL.......................................................................................14

IV.  Plaintiff's request for declaratory judgment should be dismissed as redundant ....................................................................................................................16

CONCLUSION ..................................................................................................................17

# TABLE OF AUTHORITIES

Cases                                                           Pages

*Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*,
    846 F.3d 492 (2nd Cir. 2017) ..........................................................................12

*Chauca v. Abraham*, 30 N.Y.3d 325, 89 N.E.3d 475 (2017)...................................................15

*Cooper v. New York State Dep't of Lab.*, 819 F.3d 678 (2nd Cir. 2016) ................................13

*CTS Corp. v. Waldburger*, 573 U.S. 1, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014) .............................13

*Culwick v. Wood*, 384 F. Supp. 3d 328 (E.D.N.Y. 2019) ...................................................16

*Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3rd Cir. 1998),.................................................. 8

*Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2nd Cir. 2019) ................................12

*Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266 (11th Cir.)
    *vacated as moot*, 21 F.4th 775 (11th Cir. 2021). .........................................................10

*Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 198 L. Ed. 2d 177 (2017)...............13

*Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2nd Cir. 2021)........................................................11

*Home Ins. Co. v. American Home Prods. Corp.*,
    75 N.Y.2d 196, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990))...................................................15

*In re Orion Pictures Corp.*, 4 F.3d 1095 (2nd Cir. 1993) ..................................................16-17

*Kleeberg v. Eber*, 2020 WL 4586904 (S.D.N.Y. Aug. 10, 2020),
    *on reconsideration in part*, 2021 WL 1164205 (S.D.N.Y. Mar. 25, 2021) .......................16

*Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118 (2nd Cir. 2006) ...............................14

*Krist v. Kolombos Rest. Inc.,* 688 F.3d 89 (2nd Cir. 2012) ................................................. 3

*Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016) ...................................8-9

*Martinez v. MyLife.com, Inc.*, 2021 WL 5052745 (E.D.N.Y. Nov. 1, 2021) ...................................7-8

*Paguada v. Athena Allergy, Inc.*, 21-cv-1245 (S.D.N.Y. February 22, 2022) ...................................10

*Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2nd Cir. 1999),
    *opinion amended on denial of reh'g*, 204 F.3d 392 (2nd Cir. 2000)................................. 6, 8

*Parker v. Columbia Pictures Indus.*, 204 F.3d 326 (2nd Cir. 2000) ....................................14

*Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006 (6th Cir. 1997) ........................................ 9

*Range v. 535 Broadway Grp. LLC*, 2019 WL 4182966 (S.D.N.Y. Sept. 3, 2019).............................14

*Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019) ............................................................ 9

*Romero v. 88 Acres Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022). ...........................10-13

*Suris v. Collive Corp.,* 2022 WL 542987, at *6 (E.D.N.Y. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 541765 (E.D.N.Y. Feb. 23, 2022) ...........................16

*Suris v. Gannett Co.*, 2021 WL 2953218 (E.D.N.Y. July 14, 2021) ........................................................ 7

*Tavarez v. Moo Organic Chocolates, LLC*, 2022 WL 3701508 (S.D.N.Y., August 26, 2022)......10

*United States v. Tohono O'Odham Nation*
   563 U.S. 307, 131 S. Ct. 1723, 179 L.Ed.2d 723 (2011). ............................................................ 7

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) .................................... 9

*Winegard v. Newsday LLC*, 556 F. Supp. 3d 173 (E.D.N.Y. 2021) ..................................... 5-7, 10-11

*Yates v. United States*, 574 U.S. 528, 135 S.Ct. 1074, 191 L.Ed.2d 64 (2015) ..............................11

<u>**Statues and Rules**</u>

42 U.S.C. § 12181(7) ........................................................................................................... 4, 6, 9, 11

42 U.S.C. § 12182 ................................................................................................................................ 3

28 U.S.C. 1367(c) ..............................................................................................................................14

28 C.F.R. § 36.104 ...........................................................................................................................4-5

28 C.F.R. Appendix C to Part 36...................................................................................................... 4

Fed. R. Civ. P. 12 .........................................................................................................................1, 16

NYC Admin Code. Title 8, Ch. 1, § 8-127(a) ...............................................................................14

## PRELIMINARY STATEMENT

Plaintiff Jose Mejia asserts that the website of defendant High Brew Coffee, Inc., highbrewcoffee.com, is not equally accessible to blind and visually-impaired consumers in violation of the Americans with Disabilities Act ("ADA"), and seeks injunctive relief under that statute. Because, as most courts that have examined the statute have recognized, Congress has never chosen to include virtual businesses within the scope of the ADA, plaintiff's claims fail as a matter of law and should be dismissed

Plaintiff — as he, and his lawyers, are wont to do[1] — originally filed a complaint that failed to identify facts about the website that gave him standing to assert ADA claims against it, and that asserted only formulaic assertions about his interest in the website; in response to defendant's motion to dismiss, plaintiff filed an amended complaint that added a few details about the barriers he supposedly encountered on the website and pleaded some specifics about his intent to use the website in the future. But plaintiff's amended complaint still fails to state a claim against High Brew as a matter of law because the company operates a website but does not have a public-facing physical location. As such, it is not a place of public accommodation under the Americans with Disabilities Act, and therefore, is not covered by the statute. The ADA claims are thus is subject to dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). And because the New York City Human Rights Law claims are analyzed the same way as Americans with Disabilities Act claims, plaintiff's non-federal claims should be dismissed for the same reason.

---

[1] A search of PACER, of which the Court can take judicial notice, reveals that this particular plaintiff has filed 62 of these boilerplate cases in a three month period earlier this year, but his lawyer has filed hundreds more substantially identical ones on behalf of other purportedly visually-impaired Internet users. The original complaints in these cases were substantially identical to the original complaint in this case.

Additionally, plaintiff fails to establish his entitlement to several of the forms of relief he seeks, asking for remedies that are not even available under applicable laws under which this suit was brought.

## STATEMENT OF FACTS

Defendant High Brew is a corporation organized under the laws of the state of Delaware that manufactures canned cold-brewed coffee; it also operates a website located at www.highbrewcoffee.com to sell this coffee. (As reflected on defendant's website, other retailers sell High Brew's products as well.) Plaintiff alleges that he is a resident of the Bronx who is a visually impaired and legally blind individual with a qualifying disability under the Americans with Disabilities Act. He alleges that he uses specialized screen reading software to enable him to access information on the Internet

Plaintiff initially claimed that in April 2022 (as well as, perhaps, unspecified "times in the past") he tried to access defendant's website in order to "inter alia, purchase products, goods, and/or services" of some unspecified nature. However, when he did so, he allegedly encountered a few vaguely described virtual barriers that purportedly prevented him from being able to complete a purchase of some unspecified good or service. Because defendant proposed to file a motion to dismiss, plaintiff —realizing the deficiencies in those pleadings — subsequently filed an amended complaint to make his allegations slightly less conclusory. This amended pleading clarified that plaintiff had actually visited defendant's website twice — once in April 2022, and then again on August 10, 2022, the day before filing his amended complaint — to order a specific one of defendant's products. The amended complaint further altered the description of the barriers plaintiff supposedly encountered on defendant's website.

## <u>LEGAL ARGUMENT</u>

**I.      The complaint should be dismissed because High Brew's website is not a place of public accommodation under the ADA.**

The Americans with Disabilities Act is undeniably a broad statute, but it nevertheless has its limits; for example, Title III — the relevant portion of the statute — applies only to a "place of public accommodation." Indeed, the text of the statute emphasizes that qualification, using it twice in the operative provision:

> No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any <u>place of public accommodation</u> by any person who owns, leases (or leases to), or operates a <u>place of public accommodation</u>.

42 U.S.C.A. § 12182(a). Because High Brew does not operate a place of public accommodation — it is, as plaintiff forthrightly pleads, at most an "online retail company that owns and operates a website" — plaintiff has failed to state a claim with respect to High Brew. Plainly speaking, highbrewcoffee.com is not a place of public accommodation.

To state a claim under Title III, the plaintiff must establish "(1) that he or she is disabled within the meaning of the ADA; (2) that the defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against the plaintiff within the meaning of the ADA." *Krist v. Kolombos Rest. Inc.,* 688 F.3d 89, 95 (2nd Cir. 2012) Plaintiff has alleged — barely — the first and third elements, but fails to allege, in anything other than entirely conclusory fashion, the second, that High Brew owns, leases, or operates a "place of public accommodation."   And because that is an indispensable element of his cause of action, he has not pleaded an ADA Title III discrimination claim.

The only allegations in the first amended complaint that defendant's business is such a place are the conclusory assertions in Paragraphs 15 and 40 that defendant's website is a

"public accommodation as defined under [or "within the definition of"] 42 U.S.C. § 12181(7)."

However, plaintiff has pleaded no facts to explain *how* defendant's website fits within that

statutory section, which provides a detailed list of the types of entities that are considered

"public accommodations" for purposes of Title III:

> (A) an inn, hotel, motel, or other place of lodging . . .
> (B) a restaurant, bar, or other establishment serving food or drink;
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
> (G) a terminal, depot, or other station used for specified public transportation;
> (H) a museum, library, gallery, or other place of public display or collection;
> (I) a park, zoo, amusement park, or other place of recreation;
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and
> (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42 U.S.C. § 12181(7). The regulations promulgated by the Department of Justice echo that

list, and then emphasize that this list is not merely a list of exemplars, but a *complete* list: "In

order to be a place of public accommodation, a facility . . . **must** fall within one of these 12

categories." 28 C.F.R. Appendix C to Part 36 (Emphasis added.)

This list explicitly includes only physical places, open to the public; websites,

unconnected to any physical place of business, are conspicuous only by their absence. The

regulations provide even more clarity: 28 C.F.R. § 36.104 says that a "place of public

accommodation means a *facility* operated by a private entity whose operations affect

commerce and fall within at least one of the following categories." (Emphasis added.)  And to make the relationship to a physical location even clearer, it proceeds to define "facility" as "all or any portion of buildings, structures, sites, complexes, equipment, rolling stock or other conveyances, roads, walks, passageways, parking lots, or other real or personal property, including the site where the building, property, structure, or equipment is located."  It is difficult to see how that definition could be reasonably interpreted to cover a website, as opposed to physical property.

To be sure, the Second Circuit has never spoken to the issue raised here — whether a website with no nexus to any public-facing physical location is a place of public accommodation — and there is a split of authority, both nationwide and within the district courts in this circuit, as to that issue. But Judge Komitee's careful decision in *Winegard v. Newsday LLC*, 556 F. Supp. 3d 173  (E.D.N.Y. 2021) is most compelling. After first noting that the phrase "place of public accommodation" has been used for decades to refer to physical places rather than all types of businesses, Judge Komitee examined — as have the Circuit Courts ruling against plaintiff's interpretation of the law — the actual language of the ADA. He pointed out that the statute was very precise, listing fifty specific examples of the types of businesses covered, and that at least forty nine of them "indisputably relate to physical places." *Id*. at 177. (The fiftieth, which some courts said referred to a non-physical place, was a "travel service," but as Judge Komitee noted, there is no reason to assume that this does not refer to a physical travel agency also. *Id*. at n.1) Judge Komitee also noted that Congress made specific word choices going out of its way to indicate that it was considering only physical locations — for example, "the office of an accountant or lawyer" rather than "accounting firm or law firm," and "office of a health care provider" rather than "health care

practice." He further noted that the statute expressly uses the phrase "place of" public accommodation, rather than just "public accommodation," and the term "place" is generally understood to mean a literal *physical* place. *Id.*

Judge Komitee then examined *Pallozzi v. Allstate Life Insurance Co.*, 198 F.3d 28 (2nd Cir. 1999), *opinion amended on denial of reh'g*, 204 F.3d 392 (2nd Cir. 2000), the Second Circuit's decision upon which upon which so much of this Circuit's ADA caselaw rests. *Pallozzi* did not have anything to do with websites, but it held that since Title III expressly applies to "insurance offices," 42 U.S.C. § 12181(7)(F), it also applies to the insurance policies issued by those insurance offices. And since an insurance policy is not a physical location — the argument by the law firm here which has brought hundreds of these cookie cutter cases goes — *Pallozzi* must be understood as holding that the ADA reached businesses beyond physical locations. But Judge Komitee noted that *Pallozzi* did *not* in fact hold that the ADA applied to non-physical places. Instead, it held that given that the case involved a physical place of public accommodation indisputably covered by the ADA (an insurance office), the ADA covered discrimination in the provision of goods and services *of* that place of public accommodation. *Id.* at 181.

In other words, under the analysis of *Pallozzi*, the existence of a physical place of public accommodation is a "condition precedent" to application of Title III to the goods and services sold by that place. *Id.*. Importantly, the Second Circuit did *not* rely on policy arguments or cherrypicked legislative history in order to reach its decision in *Pallozzi*; it did so based on the text of the statute: an insurance office is a listed place of public accommodation. In the almost quarter century since the *Pallozzi* decision was first handed down, the Second Circuit has never suggested that strict compliance with the textual

requirements that a defendant must fall within one of the statute's specified categories could be dispensed with.

In addition, Judge Komitee considered and rejected two other related arguments sometimes relied on by courts in this area: that Congress could not have anticipated the Internet (and therefore its failure to include non-physical businesses in its coverage should not be interpreted as an intent to exclude them), and that the Internet's importance in the economy means that excluding websites from coverage would defeat the purpose of the statute. With respect to the first, Judge Komitee pointed out that non-physical businesses (for example mail-order catalogs, and television), were certainly known to Congress, and yet Congress chose not to include them; he further pointed out that Congress amended the ADA much more recently — in 2008, when the Internet was already a mature medium — and did not take any steps to clarify that non-physical businesses were included in its scope. *Id.* at 177-78. With respect to the second point, he recognized that "considerations of policy divorced from the statute's text and purpose could not override its meaning." *Id.* at 182-83 (*quoting United States v. Tohono O'Odham Nation*, 563 U.S. 307, 131 S. Ct. 1723, 1731, 179 L.Ed.2d 723 (2011)).

*Newsday's* holding that Title III cannot be interpreted to apply to stand-alone websites is not an outlier; other courts in this Circuit have recently held the same. In *Suris v. Gannett Co.*, 2021 WL 2953218, at *2 (E.D.N.Y. July 14, 2021), the court dismissed an ADA lawsuit against a newspaper's purportedly inaccessible website because "even liberally construed" the court could not find that a stand alone website falls within any of the twelve statutory categories of places of public accommodation. And in *Martinez v. MyLife.com, Inc.*, 2021 WL 5052745, at *3 (E.D.N.Y. Nov. 1, 2021), the court dismissed a lawsuit against a

website that did not serve as an adjunct to a brick-and-mortar business and had no public-facing, physical retail operations, finding that it was not a place of public accommodation because the text of the statute expressly targeted physical places only, rather than all businesses.  Like the *Newsday* decision, it noted that *Pallozzi* could not bear the weight that some courts had placed on it, because *Pallozzi* involved an insurance office that was a place of public accommodation.

Moreover, while there is admittedly a circuit split on the issue, at least *five* Circuit Courts have also expressly held that Title III of the ADA only applies to physical places. In *Ford v. Schering-Plough Corp.*, 145 F.3d 601 (3rd Cir. 1998), the plaintiff sued the insurance company that provided insurance benefits to her through her employer. But because she received her benefits through her employer, she had no "nexus" to the insurance company's office, and because "the plain meaning of Title III is that a public accommodation is a place," the ADA did not protect her from "discrimination unrelated to places." *Id*. at 612-13. Importantly, the Third Circuit found no ambiguity in the ADA's definition of public accommodation; *Id.* at 614.

The Fifth Circuit's decision in *Magee v. Coca-Cola Refreshments USA, Inc.*, 833 F.3d 530 (5th Cir. 2016) is perhaps even more applicable to the instant case. In that case, the plaintiff sued Coca-Cola for operating an allegedly inaccessible vending machine. But the court upheld the dismissal of the Title III ADA case against Coca-Cola, holding the statute to be "unambiguous" as applying only to physical places of business. *Id.* at 534-35. And the mere fact that Coca-Cola sold products to the public — just as High Brew does — did not mean that it fit within any of the statutory definitions of a "place of public accommodation," such as a

"sales establishment."[2] The Fifth Circuit also examined the legislative history and regulatory guidance and noted that every example given by House committee reports and the DOJ of the liberal construction of the ADA referred to physical places.

Like the Third Circuit, the Sixth Circuit rejected a similar claim against an insurance company that provided employee benefits, finding that "the clear connotation of the words in § 12181(7) is that a public accommodation is a physical place. Every term listed in § 12181(7) and subsection (F) is a physical place open to public access." *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1014 (6th Cir. 1997) (characterizing an interpretation of the statute as permitting a place of accommodation to constitute something other than a physical place as "ignor[ing] the text of the statute").

The Ninth Circuit has held similarly. *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1114 (9th Cir. 2000)(all items listed in the statute are actual, physical places, and applying *noscitur a sociis* to find that the statute only covered such places). Later, the Ninth Circuit clarified *Weyer*, holding that a website could be covered by the ADA, but **only** because the website facilitated access to the goods and services *of an actual physical place of public accommodation*. *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir. 2019) (reiterating that Title III only applied to physical locations or websites with a nexus to physical locations.) Instructively, *Robles* did not hold that merely *having* a physical place of business was sufficient to draw a website within the ambit of the ADA; rather, it held that the website was covered because it enabled the customer to access the goods of that physical place.

---

[2] The Fifth Circuit noted that the business where such a vending machine was located might well be a place of public accommodation, and therefore the ADA might impose requirements on those businesses to have accessible vending machines. But the Coca-Cola Company, which was the only defendant in the case, was not operating such a physical place merely by dint of selling products to the public.

And the Eleventh Circuit found Title III's statutory definition "unambiguous and clear" as only applying to "tangible, physical places. No intangible places or spaces, such as websites, are listed." *Gil v. Winn-Dixie Stores, Inc.*, 993 F.3d 1266, 1276–77 (11th Cir.), *vacated as moot*, 21 F.4th 775 (11th Cir. 2021). Indeed, the *Winn-Dixie* decision went even further than the other circuits, rejecting the "nexus" test between websites and physical locations as lacking any "basis for it in the statute or in our precedent." *Id.* at 1281.

In others of their cookie-cutter cases, plaintiff's law firm has noted that some courts in this district have expressly held that websites are places of public accommodation, and a small handful have found in favor of plaintiffs with respect to the precise issue here: whether a website with no nexus to any public-facing physical location fits within the statutory requirement. Defendant respectfully submits that this Court should not follow those anomalous decisions, which rely either on a misreading of *Pallozzi* or on policy arguments divorced from statutory text.

As an initial matter, it bears noting that almost all of those rulings predate Judge Komitee's *Newsday* decision, and thus did not have the opportunity to consider the careful statutory analysis contained therein.[3] The only case from this district that actually does consider and reject *Newsday* is *Romero v. 88 Acres Foods, Inc.*, 2022 WL 158686 (S.D.N.Y. Jan. 18, 2022). The *88 Acres Foods* case did — unlike many of the prior cases to consider the issue — examine the text of the applicable statute, and (in contrast to *Newsday*, *Gannett Co.*, and

---

[3] A couple of post-*Newsday* decisions exist that do not consider Judge Komitee's analysis. *Tavarez v. Moo Organic Chocolates, LLC*, 2022 WL 3701508 (S.D.N.Y., August 26, 2022) never even mentions it. And one other case that plaintiff's law firm has cited in the past, an oral decision in *Paguada v. Athena Allergy, Inc.*, 21-cv-1245 (S.D.N.Y. February 22, 2022), was issued after *Newsday*, but defendant's motion predated *Newsday*, and so the parties never raised, and the court never addressed, that case; it is not so much as mentioned even once in the *Athena Allergy* ruling.

*MyLife*, as well as the Third, Fifth, Sixth, Ninth, and Eleventh Circuits) found it ambiguous. But it did so almost solely based on the fact that a single one of the 50 specified types of places of public accommodation in the statute — a "travel service" — could in theory be a non-physical place. But (as Judge Komitee noted in *Newsday*) there is no reason to read that term in such a fashion, and that is a strained interpretation. "Travel service" is not mentioned by itself.  Rather, it is included in 42 U.S.C. § 12181(7)(F) in a list of indisputably physical businesses:

> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;

The *noscitur a sociis* statutory construction canon (literally, "it is known by its associates") says that words should be interpreted by looking at the neighboring words. "Employing *noscitur a sociis* helps prevent a court from "ascribing to one word a meaning so broad that it is inconsistent with its accompanying words, thus giving unintended breadth to the Acts of Congress.'" *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 604 (2nd Cir. 2021), *quoting Yates v. United States*, 574 U.S. 528, 543, 135 S.Ct. 1074, 191 L.Ed.2d 64 (2015).

Nothing in the ADA's lengthy and specific list of "public accommodations" suggests Congress was seeking to regulate a non-brick-and-mortar travel agency[4] when it drafted the statute. Not only are all of the other items in that list physical businesses, but Congress went out of its way to describe them that way: not "accounting or legal services," but "the office of an accountant or lawyer"; not "medical care" but "the professional office of a health care

---

[4] Note that at one point the *88 Acres Foods* decision (at *10) accidentally uses the phrase "travel services," which could perhaps sounds more like an intangible commercial offering. But the actual statutory phrase is "a… travel service," which would most reasonably be read as a single physical business — especially in 1990, when the ADA was enacted.

provider."  Why would Congress carefully itemize such narrowed examples if it were allegedly intending for the broadest possible interpretation?  (If a "travel service" could have dealt with customers over the phone or via mail, so could accounting or legal services.) And if every one of 50 specified examples is a physical business, then the principle of *ejusdem generis* ("of the same kind") says that a residual clause like "other sales or rental establishment" should be interpreted the same way.  Thus, when read in this clearest manner, the statute is unambiguous in applying only to physical places of public accommodation, as the Third, Fifth, Sixth, Ninth, and Eleventh Circuits have all ruled.

After finding that ambiguity, the *88 Acres Foods* case relied on a policy argument: that it would be "absurd" to distinguish between shopping at Whole Foods in-store and Whole Foods online. But that, respectfully, is not how the absurdity canon works.  "A statute is not 'absurd' merely because it produces results that a court or litigant finds anomalous or perhaps unwise." *Gibbons v. Bristol-Myers Squibb Co*., 919 F.3d 699, 705 (2nd Cir. 2019) Rather, it applies only where it is "quite impossible that Congress could have intended the result and where the alleged absurdity is so clear as to be obvious to most anyone."  *Id*., *quoting Catskill Mountains Chapter of Trout Unlimited, Inc. v. Envtl. Prot. Agency*, 846 F.3d 492, 517 (2nd Cir. 2017).  In this instance, there may be very good reasons to distinguish between a local physical store for which there are few alternatives for a consumer, and an Internet website, for which there are millions of alternatives available at the click of a keyboard.  It is certainly not "impossible" to think that Congress could have intended that. Moreover, that example is something of a straw man, since Whole Foods' website *does* have a nexus to brick-and-mortar locations. The interpretation of the ADA being urged by defendant herein, as well as the *Newsday, Gannett Co.,* and *MyLife* courts and five Circuit

Courts of Appeal, is about distinguishing between Whole Foods in-store/online on the one hand and, for example, eBay.com on the other. (Or, in this case, highbrewcoffee.com).

The *88 Acres Food* court also relied on isolated snippets of legislative history not part of the statute, expressing a view of the importance of eliminating discrimination. But as the Supreme Court has repeatedly cautioned, "no legislation pursues its purposes at all costs." *CTS Corp. v. Waldburger*, 573 U.S. 1, 134 S.Ct. 2175, 2185, 189 L.Ed.2d 62 (2014)(reminding that it is error to use the proposition that remedial statutes should be interpreted liberally as a substitute for a conclusion grounded in the statute's text and structure." *See also Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1725, 198 L. Ed. 2d 177 (2017)(calling it "mistaken" for a court to "assume" that "'whatever' might appear to 'further[ ] the statute's primary objective must be the law.'") Applying that principle, the Second Circuit has instructed that, even in the context of anti-discrimination law, "We may not, in the name of advancing general aims, ignore Congress's choice to carefully circumscribe the universe of 'unlawful employment practices.'" *Cooper v. New York State Dep't of Lab.*, 819 F.3d 678, 682 (2nd Cir. 2016).

Congress knows how to write broad language when it chooses, and it seems odd to suggest that Congress would have carefully delineated twelve categories of business to which the ADA applies, and then gone on to enumerate *fifty* separate specific examples, when it could have used a catchall phrase such as "all businesses engaged in or that affect interstate commerce" if it actually wanted to ensure that the statute's coverage was universal. Defendant respectfully suggests that this Court should heed the Second Circuit's admonition in *Cooper*, find the text of the statute unambiguous, and should not resort to policy arguments to expand the scope of the ADA without express legislative authorization. As

highbrewcoffee.com has no physical location, it is not within the statutory definition of a place of public accommodation, and plaintiff has thus failed to state a claim against it under the Americans with Disabilities Act.

## II.     Plaintiff's city law claims must be dismissed for the same reasons his ADA claims must be.

In general, disability discrimination claims under the parallel state and city disability discrimination laws are evaluated under the same standards as the ADA. *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 332 n.1 (2nd Cir. 2000); *Range v. 535 Broadway Grp. LLC*, 2019 WL 4182966, at *6 (S.D.N.Y. Sept. 3, 2019)(failure to state a claim under the ADA means that NYSHRL and NYSCRL claims also fail).

Alternatively, assuming dismissal of plaintiff's only federal claim in this case as demonstrated in Section I herein, this Court should decline to exercise supplemental jurisdiction over plaintiff's state law claims and dismiss them pursuant to 28 U.S.C. § 1367(c). *See Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2nd Cir. 2006) (in the usual case in which all federal-law claims are eliminated before trial, courts should decline jurisdiction over the non-federal claims).

## III.    Plaintiff is not entitled to a recovery of "civil penalties and fines" or punitive damages under the NYCHRL.

Even if Title III of the Americans with Disabilities Act covered defendant's intangible business, plaintiff would not be entitled to most of the relief he seeks. Plaintiff states that he seeks to recover "civil penalties and fines" pursuant to the NYCHRL. But he is not entitled to such. Civil penalties and fines under the NYCHRL are payable to the *city*, not to a private plaintiff. NYC Admin Code. Title 8, Ch. 1, § 8-127(a).("Any civil penalties recovered pursuant to this chapter shall be paid into the general fund of the city.")

Plaintiff further seeks punitive damages, but the standard for obtaining that relief is high, and cannot be met here. The New York Court of Appeals explained that punitive damages require conduct that "goes beyond mere negligence"; they are available only for those who have "engaged in discrimination with willful or wanton negligence, or recklessness, or a 'conscious disregard of the rights of others or conduct so reckless as to amount to such disregard.'" *Chauca v. Abraham*, 30 N.Y.3d 325, 334, 89 N.E.3d 475, 481 (2017)(*quoting Home Ins. Co. v. American Home Prods. Corp.*, 75 N.Y.2d 196, 203–204, 551 N.Y.S.2d 481, 550 N.E.2d 930 (1990))(rejecting the notion that a mere showing of discrimination made punitive damages automatically available).

Here, though, plaintiff has not pleaded any specific facts to support any such heightened standard. Indeed, other than a conclusory use of the word "willful," he does not allege anything to suggest that High Brew's purported website violations had a "high degree of moral culpability which manifests a conscious disregard of the rights of others or conduct so reckless as to amount to such disregard." *Id*. at 479. he does not, for instance, plead that defendant refused to remedy violations after those violations were brought to defendant's attention; he merely pleads that the violations occurred. (To be sure, plaintiff does *use* the word "refusal" in his complaint. But he pleads no *facts* to support that conclusory allegation.) Notably, in keeping with this law firm's scheme in bringing hundreds of these cookie cutter claims, Mr. Mejia does not claim to, and did not, contact High Brew in any manner with any concern prior to these lawyers filing suit. But while those violations could be enough (if proved) to support liability for a violation of the applicable law, *Chauca* <u>expressly</u> rejected the notion that punitive damages are available "whenever liability, vicarious or direct, is demonstrated." *Id*. at 480. And if that is insufficient to support an award of punitive damages,

than conclusorily alleging it is insufficient to satisfy the pleading burden, and the request for punitive damages must be dismissed. *See Suris v. Collive Corp.*, 2022 WL 542987, at *6 (E.D.N.Y. Jan. 10, 2022), *report and recommendation adopted*, 2022 WL 541765 (E.D.N.Y. Feb. 23, 2022) (denying request for punitive damages because generic pleading of failure to make site accessible does not establish willful or wanton negligence or recklessness).

## IV. Plaintiff's request for declaratory judgment should be dismissed as redundant.

In Count III of his amended complaint, plaintiff asserted a claim for declaratory judgment that defendant violated the ADA (42 U.S.C. §§ 12182, et seq.), and the NYCHRL (N.Y.C. Admin. Code § 8-107, et seq.) by failing to maintain an accessible website. But Count I of the amended complaint alleged that defendant violated the ADA by failing to maintain an accessible website, and Count II of the amended complaint alleged that defendant violated the NYCHRL by failing to maintain an accessible website. In short, Count III raises exactly the same claims as Counts I and II, making it entirely redundant.

Such redundancy matters because "'[a] declaratory judgment action cannot be maintained [when] it parallels the other claims and merely seeks a declaration of the same rights and obligations.'" *Kleeberg v. Eber*, 2020 WL 4586904, at *16 (S.D.N.Y. Aug. 10, 2020), *on reconsideration in part*, 2021 WL 1164205 (S.D.N.Y. Mar. 25, 2021)(*quoting Culwick v. Wood*, 384 F. Supp. 3d 328, 343 (E.D.N.Y. 2019) (internal quotation marks omitted)(collecting cases). The remedy to such redundant pleading is clear: "Where a district court has before it a declaratory judgment action and a direct action containing all of the issues in the declaratory judgment action, and decides the common issues in the direct action, it may exercise its discretion to dismiss the declaratory judgment complaint." *In re*

*Orion Pictures Corp.*, 4 F.3d 1095, 1100 (2nd Cir. 1993)  Plaintiff can obtain no relief from Count III that he would not already obtain from Counts I and II.  Accordingly, the Court should dismiss plaintiff's declaratory judgment claim.

## CONCLUSION

The plain language of the Americans with Disabilities Act renders it unambiguous that regulation of "brick and mortar" businesses was intended and regulation of business activity not tied to a physical location was not. The many hundreds of suits which these lawyers have filed in a short time period all suffer from the same misreading of clear text of this law. Defendant respectfully suggests that this Court should not read the statute more broadly than Congress drafted it based on the ostensible premise that it furthers Congressional intent, when the actual effect of doing so is to incentivize a business model by plaintiff's lawyers that involves suing small businesses *en masse* to collect quick settlements from small companies that find it cheaper to pay relatively small sums than it would be to defend themselves against entrepreneurial litigation. In any event, for the reasons set forth above, this Court should dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

Respectfully submitted,

By:   David Stein

Dated: November 9, 2022