UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

………………………………………………….x

JOSE MEJIA,

        Plaintiff,

   -v-                                                      No. 1:22-CV-03667-LTS

HIGH BREW COFFEE INC.,

        Defendant.

………………………………………………….x

## MEMORANDUM ORDER

      Plaintiff Jose Mejia ("Plaintiff") brings this putative class action against High Brew Coffee, Inc. ("Defendant") asserting violations of Title III ("Title III") of the Americans with Disabilities Act of 1990, 42 U.S.C. section 12101 et seq. (the "ADA"), and the New York City Human Rights Law, N.Y.C. Administrative Code sections 8-101 et seq. ("NYCHRL"). (Docket entry no. 1 (the "Complaint" or "Compl.").) Count I of the Complaint seeks injunctive relief under the ADA pertaining to Defendant's website. Count II seeks damages under the NYCHRL. Count III seeks declaratory relief with respect to the ADA and NYCHRL violations alleged in Counts I and II.

      Defendant has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint in its entirety, for failure to state a claim. The Court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. section 1331. The Court has considered carefully the parties' submissions and, for the following reasons, Defendant's motion to dismiss the Complaint is granted.

## BACKGROUND

The following allegations are taken from the Complaint and are presumed true for the purposes of this motion. Plaintiff is a legally blind individual who the parties agree is disabled within the meaning of the ADA. (Compl. ¶ 1.) Defendant sells coffee solely through an online platform, highbrewcoffee.com (the "Website"). (Id.)

On April 10 and on August 10, 2022, Plaintiff attempted to purchase a twelve-pack of Double Espresso flavored coffee on the Website, but he was unsuccessful both times. (Id. ¶¶ 1-2.) Due to Plaintiff's disability, he uses screen-reading software to navigate online. (Id. ¶ 1.) He was unable to use this software to make a purchase on the Website, however, because problems with the website's coding rendered the screen-reader unusable. (Id. ¶¶ 2-4.) In the Complaint, Plaintiff lists several accessibility issues that arose when he attempted to use his screen-reader software with the website. Plaintiff's screen-reading software was unable to: read when an item has been added to the "shopping cart," (id. ¶ 4(a)), indicate which products were added (id. ¶ 4(b)), read full details about, and descriptions of, the products (id. ¶ 4(c)), or accurately describe images of products on the Website (id. ¶ 4(d)). When used with the Website, the screen reader also fails to read some of the Website's text (id. ¶ 4(e)), does not highlight all the text it is reading (id. ¶ 4(f)), reads information that Plaintiff has not selected for reading (id. ¶ 4(g)), reads certain text out of order (id. ¶ 4(h)), and reads text that is not visible on the Website (id. ¶ 4(i)). These errors "impede Plaintiff's ability to navigate the [W]ebsite as a sighted New York customer would." (Id.) Plaintiff asserts that "the barriers continue to exist as of the date of the filing of this amended complaint." (Id. ¶ 5.) Plaintiff intends to complete his purchase if and when the Website's accessibility issues are resolved. (Id. ¶ 8.)

DISCUSSION

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citation omitted). A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice. Twombly, 550 U.S. at 555. "In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff." Sara Designs, Inc. v. A Classic Time Watch Co. Inc., 234 F. Supp. 3d 548, 554 (S.D.N.Y. 2017) (citing Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009)).

Title III of the ADA dictates that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C.A. § 12182(a) (Westlaw through P.L. 118-82). To state a claim for relief under Title III of the ADA, a plaintiff "must allege (1) that [he] is disabled within the meaning of the ADA; (2) that defendants own, lease, or operate a place of public accommodation; and (3) that defendants discriminated against [him] by denying [him] a full and equal opportunity to enjoy the services defendants provide." Camarillo v. Carrols Corp., 518 F.3d 153, 156 (2d Cir. 2008). Defendant does not contest the first or third elements of Plaintiff's claim, arguing instead that the Website is not a place of public accommodation, and therefore is not covered by the ADA.

"The [ADA] does not contain a definition of the term 'place of public accommodation.'" Andrews v. Blick Art Materials, LLC, 268 F. Supp. 3d 381, 388 (E.D.N.Y. 2017). Instead, it provides that private entities are to be considered public accommodations if their operations affect commerce, and they fall within one of twelve enumerated categories, expressed in the statute as non-exclusive lists of different types of enterprises. These categories are:

> (A) an inn, hotel, motel, or other place of lodging, except for an establishment located within a building that contains not more than five rooms for rent or hire and that is actually occupied by the proprietor of such establishment as the residence of such proprietor;
>
> (B) a restaurant, bar, or other establishment serving food or drink;
>
> (C) a motion picture house, theater, concert hall, stadium, or other place of exhibition or entertainment;
>
> (D) an auditorium, convention center, lecture hall, or other place of public gathering;
>
> (E) a bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment;
>
> (F) a laundromat, dry-cleaner, bank, barber shop, beauty shop, travel service, shoe repair service, funeral parlor, gas station, office of an accountant or lawyer, pharmacy, insurance office, professional office of a health care provider, hospital, or other service establishment;
>
> (G) a terminal, depot, or other station used for specified public transportation;
>
> (H) a museum, library, gallery, or other place of public display or collection;
>
> (I) a park, zoo, amusement park, or other place of recreation;
>
> (J) a nursery, elementary, secondary, undergraduate, or postgraduate private school, or other place of education;
>
> (K) a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment; and

>   (L) a gymnasium, health spa, bowling alley, golf course, or other place of exercise or recreation.

42. U.S.C.A. § 12181(7)(A)-(L) (Westlaw through P.L. 118-82).

A majority of circuit courts – the Third, Sixth, Seventh, Ninth, and Eleventh – have found that a website constitutes a place of public accommodation only if it has a connection to a physical location (i.e., a "brick and mortar" store or establishment). See Ford v. Schering-Plough Corp., 145 F.3d 601, 614 (3d Cir. 1998) ("The plain meaning of Title III is that a public accommodation is a place. . . . This is in keeping with the host of examples of public accommodations provided by the ADA, all of which refer to places."), accord Peoples v. Discover Fin. Servs., Inc., 387 F. App'x 179, 183 (3d Cir. 2010); see also Parker v. Metro. Life Ins. Co., 121 F.3d 1006, 1011-12 (6th Cir. 1997) ("The clear connotation of the words in § 12181(7) is that a public accommodation is a physical place."); Weyer v. Twentieth Century Fox Film Corp., 198 F.3d 1104, 1114 (9th Cir. 2000) ("The principle of noscitur a socis requires that the term, "place of public accommodation," be interpreted within the context of the accompanying words, and this context suggests that some connection between the good or service complained of and an actual physical space is required."); Gil v. Winn-Dixie Stores, Inc., 993 F.3d 1266, 1277 (11th Cir. 2021) (finding that the "unambiguous and clear" language of the statute only "describes twelve types of locations that are tangible, physical spaces" and thus limits public accommodations "to actual, physical places" and does not encompass websites (internal citations omitted)), vacated on reh'g on other grounds, 21 F.4th 775 (2021). The First and Seventh Circuits have adopted the minority position, that no "physical nexus" is required for a private entity, when engaged in commerce, to fall under the ADA's ambit. See Carparts Distrib. Ctr. v. Auto. Wholesaler's Ass'n of New Eng., 37 F.3d 12, 19 (1st Cir. 1994) ("By

including 'travel service' among the list of services considered 'public accommodations,' Congress clearly contemplated that 'service establishments' include providers of services which do not require a person to physical enter an actual physical structure."); Doe v. Mut. of Omaha Ins. Co., 179 F.3d 557, 559 (7th Cir. 1999) ("The core meaning of [section 302(a) of Title III of the ADA], plainly enough, is that the owner or operator of a store, hotel, restaurant, dentist's office, travel agency, theater, Web site, or other facility (whether in physical space or in electronic space) that is open to the public cannot exclude disabled persons from entering the facility and, once in, from using the facility in the same way that the non-disabled do." (internal citation omitted)).

The Second Circuit has not squarely addressed the question of whether a website, absent a connection to a physical location, constitutes a place of public accommodation. It came closest in Pallozzi v. Allstate Life Ins. Co., 198 F.3d 28 (2d Cir. 1999), which held that, because insurance offices are listed as a place of public accommodation, the ADA "guarantee[s] . . . more than mere physical access" to the facility but also prohibits discrimination in the sale of related "goods" and "services" provided by that place of public accommodation, including insurance policies. Id. at 31-33 (citing 42 U.S.C. §§ 12181(7)(F), 12181(a)). Plaintiff urges a broader reading of Pallozzi that, he contends, resolves the central question in this case. (Pl. Mem. at 6 ("The central holding of Pallozzi is that businesses that transact with the public are places of public accommodations as defined by Title III of the ADA regardless of whether they are conducted physically in a store or through another medium unrelated to a physical location.").) Plaintiff points to other district courts in this Circuit that have applied Pallozzi in this manner and ruled that stand-alone websites qualify as public accommodations under the ADA. See, e.g., Andrews, 268 F. Supp. 3d at 393 ("This district court, as it must, adopts the Second Circuit's

sensible approach [from Pallozzi] to the ADA. It is unambiguous that under Title III of the ADA, [defendant's website] is a place of public accommodation."); Del-Orden v. Bonobos, No. 17-CV-2744-PAE, 2017 WL 6547902, at *5 (S.D.N.Y. Dec. 20, 2017) (finding that a commercial website is a public accommodation within the meaning of the ADA based in part upon the consensus of the "four district courts in this Circuit to address the issue" all drawing on Pallozzi to find that Title III extends to such platforms); Thorne v. Formula 1 Motorsports, Inc., No. 19-CV-1077-JPO, 2019 WL 6916098, at *2 (S.D.N.Y. Dec. 19, 2019); Chalas v. Barlean's Organic Oils, LLC., No. 22-CV-04178-CM, 2022 WL 17156838, at *15 (S.D.N.Y. Nov. 22, 2022) ("[T]he best guess, in light of Pallozzi, is that our Circuit, were it to consider the issue, would come down on the side of the First and Seventh Circuits, and conclude that a website can be a 'place of public accommodation[.]'"); Chalas v. Pork King Good, 673 F. Supp. 3d 339, 343 (S.D.N.Y. 2023) (observing that, "[w]hile Pallozzi did not specifically decide the question of whether Title III applied to the goods and services of a website without a connection to a physical place," most district courts in this circuit have found that commercial websites quality).

        The Court respectfully disagrees with these courts' broad reading of Pallozzi as reaching internet-only businesses as places of public accommodation. What the Pallozzi court decided was not whether a standalone website constitutes a place of accommodation but, rather, whether, if a physical premises of a business constitutes a place of public accommodation, goods and services sold from those premises are subject to the equal access mandate of the ADA. See 198 F.3d at 32-33 ("We believe that an entity covered by Title III is not only obligated by the statute to provide persons with physical access but is also prohibited from refusing to sell them its merchandise by reason of discrimination of their disability."). Several courts have adopted this narrower reading of Pallozzi. See Martinez v. MyLife.com, Inc., No. 21-CV-4779-BMC,

2021 WL 5052745, at *3 (E.D.N.Y. Nov. 1, 2021) ("[In Pallozi], the Second Circuit accepted as true that the business in question was a place of 'public accommodation,' but it did not decide the issue – the issue before it was whether the covered category of 'insurance offices' included 'insurance companies.' . . . Therefore, [neither] Pallozzi – nor its progeny – mandate or suggest any conclusion as to whether a stand-alone website, such as the one at issue here, is a place of accommodation."). In Winegard v. Newsday LLC, 556 F. Supp. 3d 173 (E.D.N.Y. 2021), Judge Komitee conducted an extended analysis of Pallozzi, distinguishing the question of whether a website is a place of accommodation from the Pallozzi question – whether an insurance policy is a good or service of an entity already determined to be covered:

> The holding did not turn on the definition of "place of public accommodation" in Section 12181(7). There was no dispute that an "insurance office" qualifies as such, given that it is listed explicitly among the specific examples in Section 12181(7)(F). [Pallozzi,] 198 F.3d at 32 ("We start with the fact that Title III specifies an 'insurance office' as a 'public accommodation.'"). Having accepted that an insurance office is a "public accommodation," the Court of Appeals turned to the application of Section 12182(a) ("No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation ....").
>
> The Court of Appeals analysis thus focused on whether an insurance policy is a "good' or "service" of an insurance office. Unsurprisingly, the court concluded that the 'full and equal enjoyment' of an insurer's 'goods and services' extends to the consumption of insurance policies. The panel held that "Title III does regulate the sale of insurance policies in insurance offices." Id. at 33 (emphasis added). The physical place, per Pallozzi, is a condition precedent; once that condition is satisfied, the goods and services sold by that place of public accommodation are swept within the ADA's remit.
>
> But those goods and services are not covered by the ADA unless and until the "place of public accommodation" test is satisfied.

Id. at 180-81. "At most, therefore, Pallozzi supports the conclusion that websites are swept up in Title III when they offer the same 'goods and services' as the business's brick-and-mortar operation." Id.  The Court concurs in this view of the limits of Pallozzi's implications.

In the absence of definitive Second Circuit guidance, the Court must interpret the text and structure of the statute.  "Statutory analysis necessarily begins with the plain meaning of a law's text and, absent ambiguity, will generally end there." Bustamante v. Napolitano, 582 F.3d 403, 406 (2d Cir. 2009) (internal alterations and citation omitted).  Courts must consider "the ordinary or natural meaning of the words chosen by Congress, as well as the placement and purpose of those words in the statutory scheme." United States v. Aguilar, 585 F.3d 652, 657 (2d Cir. 2009).  In the antidiscrimination context, the phrase "a place of public accommodation" has long referred to businesses with public-facing physical facilities.  See Winegard, 556 F. Supp. 3d at 175-76 (explaining the historical use of "public accommodation" as describing "the particular subset of businesses that had heightened duties of service – often relating to lodging and transportation – because of the public-facing nature of their physical facilities").  This context is consistent with a review of the fifty entities listed in Section 12181(7):

> Title III provides an extensive list of "public accommodations" in § 12181(7), including such a wide variety of things as an inn, a restaurant, a theater, an auditorium, a bakery, a laundromat, a depot, a museum, a zoo, a nursery, a day care center, and a gymnasium.  All the items on this list, however, have something in common.  They are actual, physical places where goods or services are open to the public, and places where the public gets those services.

Weyer, 198 F.3d at 1114.[1]

---

[1]  "Department of Justice ('DOJ') regulations issued pursuant to the ADA similarly define a place of public accommodation as a 'facility,' which is in turn defined as 'all or any portion of buildings structures, sites, complexes, equipment, rolling stock . . . or other real or personal property, including the site where the building, property, structure, or

The residual clauses at the end of each list counsel towards a similar conclusion. Each list in the definition is characterized as being comprised of either "establishment[s]," 42 U.S.C. §§ 12181(7) (A, B, E, F, K), "place[s]," id. § 12181(7) (A, C, D, H, I, J, L), or "station[s]," id. § 12181(7)(G)). By listing 50 terms in section 12181(7) that almost all refer to physical places, Congress indicated an intent to limit public accommodations to entities with physical locations. Weyer, 198 F.3d at 1114. Arguably, "[t]he lone exception is 'travel service,' which is included in the list of 'service establishment[s].'" Suvino, 2017 WL 3834777, at *6 (citing 42 U.S.C. § 12181(7)(F)). Courts have disagreed on whether "travel service" should be interpreted as being limited to a physical location. Carparts, 37 F.3d at 19 (holding "travel service" is not limited to a physical location: "Congress clearly contemplated that 'service establishments' would include providers of services which do not require a person to physically enter an actual physical structure. Many travel services conduct business by telephone or correspondence without requiring their customers to enter an office in order to obtain their services."); cf. Parker, 121 F.3d at 1014 ("Rather than suggesting that Title III includes within its purview entities other than physical places, it is likely that Congress simply had no better term than 'service' to describe an office where travel agents provide travel services and a place where shoes are repaired."). Indeed, there are travel services which operate out of physical locations, and they existed in 1990 when the ADA was enacted and continue to exist today.

> Some courts have noted that 'travel service' does not invariably refer to a physical space, though there is no suggestion in the statute (or in logic) that a travel service must be a virtual operation. Read in context, 'travel service' appears to refer to travel agencies and to facilities – such as American Express counters – offering traveler's cheques, currency-exchange services and the like. These businesses commonly operated out

---

equipment is located.'" Suvino v. Time Warner Cable, Inc., No. 16-CV-7046-LTS, 2017 WL 3834777, at *6 (S.D.N.Y. Aug. 31, 2017) (quoting 28 C.F.R. § 36.104).

of physical facilities when the ADA was adopted, and still do (albeit in lesser numbers.)

Winegard, 556 F. Supp. 3d at 177 n.1 (citing Liberty Travel: Our Story, Liberty Travel ("Liberty opened its first travel agent storefront in 1951, and continues to offer locations throughout the United States"), https://www.libertytravel.com/about [https://perma.cc/JH7H-VMHF] (last visited September 30, 2024)); see also https://www.aaa.com/diamonds/$ [https://perma.cc/58WL-ST8N] (AAA provides trip planning services and advertises that customers may "Call or Visit a AAA Travel Agent Today!" with physical offices in New York, New Jersey, and four other states) (last visited September 30, 2024). Thus, every term in section 12181(7) references entities that operate out of brick-and-mortar locations.[2]

Ejusdem generis likewise supports the view that the general clauses in section 12181(7) such as "any other service establishment" should be confined to public-facing physical locations. Ejusdem generis counsels that general clauses are to be limited by the specific clauses that precede them. Pfizer, Inc. v. U.S. Dept. of Health & Hum. Servs., 42 F.4th 67, 76 (2d Cir. 2022) ("Ejusdem generis refers to the understanding that '[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words.'" (quoting Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 114-15 (2001))). Applying ejusdem generis, the

---

[2] The statutory interpretation canon, noscitur a sociis, supports the conclusion that Congress intended "travel service" to be limited to a physical place. Noscitur a sociis instructs that a word may be influenced by the words which surround it. See Freeman v. Quicken Loans, Inc., 566 U.S. 624, 634-35 (2012) ("[T]hat meaning is confirmed by the 'commonsense canon of noscitur a sociis — which counsels that a word is given more precise content by the neighboring words with which it is associated.'" (quoting United States v. Williams, 553 U.S. 285, 294 (2008))). The 49 other entities referenced in section 12181(7) are clearly physical locations and, because there are travel services that operate out of physical locations, this Court concludes that Congress intended to restrict its reference to "travel services" to such services that operate from physical locations.

category "any other service establishment" embraces only entities similar in nature to those entities preceding it in section 12181(7). These entities include, inter alia, "a laundromat," an "office of an accountant or lawyer," "a bakery," and a "travel service." 42 U.S.C.A. § 12181(7)(F) (Westlaw through P.L. 118-82). As demonstrated above, all of these entities operate in physical places. Therefore, ejusdem generis indicates that the statute was only intended to encompass "service establishments" tied to a physical location, and thus a standalone website cannot be considered a "service establishment" within the meaning of section 12181(7) because it lacks the necessary physical nexus.

Additionally, a standalone website should not be considered a "place of public accommodation" because section 12181(7) does not explicitly address businesses without a physical location, such as mail order merchandise and television shopping channels, despite numerous applicable business models in existence at the time the statute was written. See Winegard, 556 F. Supp. 3d at 177-78;[3] see also Stoutenborough v. Nat'l Football League, 59 F.3d 580, 583 (6th Cir. 1995) (finding a televised broadcast of "blacked-out" home football games did not involve a place of public accommodation because, "although a game is played in a 'place of public accommodation' and may be viewed on television in another 'place of public accommodation,' that does not suffice."). Thus, it should not be inferred that Congress intended

---

[3] "The Sears Roebuck catalog, for example, dated to 1888. See History of the Sears Catalog, Sears Archives, ("In 1888, Richard Sears first used a printed mailer to advertise watches and jewelry . . . . The time was right for mail order merchandise."); see also An Inside Look at an Outdoor Icon, L.L. Bean (L.L.'s circulars evolved into a catalog by 1927); How America Fell in and out of Love with J. Crew, CNN (J. Crew 'relaunched' as a catalog-only retailer in 1983); '8 CDs for a Penny' Company Files for Bankruptcy, NPR (Columbia House started selling vinyl records via mail order in 1955); Don't Judge the Book-of-the-Month Club by Its Cover, Smithsonian Magazine (Book-of-the-Month-Club began its subscription service in 1926); QVC.com (television shopping channel's first broadcast was in 1986); History of As Seen on TV, As Seen on TV (first 'As-Seen-on-TV' infomercial aired in the mid-1950s)."

"places of public accommodation" to include websites — a newly developed business model — when the text of the statute excludes analogous business models by imposing a physical location requirement for an entity to be considered a "place of public accommodation."

For these reasons, the Court finds that a stand-alone website is not a place of public accommodation under Title III of the ADA. Plaintiff thus fails to state a claim on which relief may be granted under the ADA. Because Plaintiff fails to state a claim under the ADA, Count III's request for declaratory relief is also dismissed.

### Remaining State Claims

Plaintiff's complaint also asserts claims under the NYCHRL. A district court may decline to exercise supplemental jurisdiction of state law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C.A. § 1367(c)(3) (Westlaw through P.L. 118-82). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988). Having dismissed the federal claims of which the Court has original jurisdiction, the Court declines to exercise its supplemental jurisdiction over any state law claims Plaintiff may be asserting. See Kolari v. New York-Presbyterian Hosp., 455 F.3d 118, 122 (2d Cir. 2006) ("Subsection (c) of § 1367 'confirms the discretionary nature of supplemental jurisdiction by enumerating the circumstances in which district courts can refuse its exercise.'" (quoting City of Chicago v. Int'l Coll. Of Surgeons, 522 U.S. 156, 173 (1997))); Madison v. CVS, No. 22-CV-4221-LTS, 2022 WL 17793254, at *3 (S.D.N.Y. Dec. 19, 2022). Because all of Plaintiff's federal claims are dismissed, this Court declines to exercise supplemental jurisdiction of Plaintiff's state and local law claims.

Leave to Amend

This Court denies Plaintiff's request for leave to amend the Complaint. Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend should be freely granted when justice so requires. FED. R. CIV. P. 15(a). While granting or denying such leave is within the discretion of the district court, see Reisner v. Gen. Motors Corp., 511 F. Supp. 1167, 1171 (S.D.N.Y. 1981), leave to amend generally will be granted unless: (1) there is evidence of undue delay, bad faith, dilatory motive, or repeated failures to cure deficiencies by amendments previously allowed; (2) allowing amendment would cause undue prejudice to the opposing party; or (3) the amendment would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962). "A proposed amendment to a pleading would be futile if it could not withstand a motion to dismiss" pursuant to Federal Rule of Civil Procedure 12(b)(6). Oneida Indian Nation of New York v. City of Sherrill, 337 F.3d 139, 168 (2d Cir. 2003) (citation omitted). Thus, "[l]eave to amend may be denied on grounds of futility if the proposed amendment fails to state a legally cognizable claim or fails to raise triable issues of fact." AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A., 626 F.3d 699, 726 (2d Cir. 2010) (citation omitted). Because Plaintiff fails to state a legally cognizable claim under the ADA, leave to amend is denied.

## CONCLUSION

For the reasons explained above, Defendant's motion to dismiss the Complaint is granted in its entirety. This Memorandum Opinion and Order resolves docket entry no. 25. The Clerk of Court is respectfully directed to enter judgment accordingly and close this case.

SO ORDERED.

Dated: New York, New York
September 30, 2024

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge